# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, ) | |
| ) | |
| Plaintiff, ) | **NON-CONFIDENTIAL** |
| ) | Proprietary |
| v. ) | Information |
| ) | Removed from |
| UNITED STATES, ) | Page 25 |
| ) | |
| Defendant, ) | |
| ) | Court No. 21-00304 |
| and, ) | |
| ) | |
| NUCOR CORPORATION, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## PLAINTIFF HYUNDAI STEEL COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

July 18, 2022

**MORRIS, MANNING & MARTIN, LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 216-4116

*Counsel to Plaintiff Hyundai Steel Company*

14013807–1

## TABLE OF CONTENTS

I.    *Statement Pursuant To Rule 56.2* ...................................................2

II.   *Issues Of Law Presented And Reasons For Contesting The Administrative Determination* ........................................................2

III.  *Statement Of Facts* ........................................................................3

IV.   *Summary Of Argument* ...................................................................10

V.    *Standard Of Review* .......................................................................11

VI.   *Argument* ........................................................................................11

    A.   *Commerce's Determination That The GOK's Provision Of Port Usage Rights Provides A Countervailable Benefit Is Unsupported By Substantial Evidence And Is Otherwise Contrary To Law.* ........................................................12

        1.   *There Is No Evidence That The Port Usage Rights Were Excessive And Thus They Provided No Countervailable Benefit.* ..............................................13

        2.   *Port Usage Rights Are Received As Repayment Of A Debt And Thus Do Not Provide A Benefit To Hyundai Steel.* ........................................................23

    B.   *The Court Should Sustain the Department's Redetermination Regarding The Alleged Reduction For Sewerage Fees.* ........................................................36

VII.  *Conclusion And Relief Requested* ................................................37

*Certificate Of Compliance* ...................................................................39

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. United States,*
  364 U.S. 40 (1960)..................................................................26

*Dolan v. City of Tigard,*
  512 U.S. 374 (1994)................................................................26

*Government of Sri Lanka v. United States,*
  308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018)............................24, 29-34

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................11

19 U.S.C. § 1671(6) .................................................................35

19 U.S.C. § 1677(5)..............................................................11, 29

**U.S. Constitution**

U.S. Const. amend. V ...............................................................26

**Regulations**

19 C.F.R. § 351.106(c)............................................................9, 12

19 C.F.R. § 351.503(b) .........................................................23-24, 28

19 C.F.R. § 351.504 ..................................................................29

**Other Authorities**

*Certain Hot-Rolled Steel Flat Products From the Republic of
  Korea: Final Results of Countervailing Duty
  Administrative Review; 2017*, 85 Fed. Reg. 64,122 (Dep't
  Commerce Oct. 9, 2020).............................................................5

*Certain Quartz Surface Products From the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, In Part*, 85 Fed. Reg. 25,400 (Dep't Commerce May 1, 2020) ......................................................... 21-23

*Certain Quartz Surface Products From the Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 54,841 (Dep't Commerce Oct. 11, 2019) ....................................................................... 21-23

*Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2011*, 79 Fed. Reg. 5,378 (Dep't Commerce Jan. 31, 2014) .................................................. 14, 17, 19-20

*Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review; 2011*, 78 Fed. Reg. 55,241 (Dep't Commerce Sept. 10, 2013) .................................... 14, 17, 19-20

*Final Affirmative Countervailing Duty Determination: Stainless Steel Sheet and Strip in Coils From the Republic of Korea*, 64 Fed. Reg. 30,636 (Dep't Commerce June 8, 1999) ........................................................ 16, 21-22, 33—34, 54

*Notice of Final Affirmative Countervailing Duty Determination: Certain Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002) ..................................... 14-15, 17, 19-20

*Notice of Final Results of Countervailing Duty Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea*, 72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007) .................... 14-17, 19, 21

*Supercalendered Paper From Canada: Final Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 63,535 (Dep't Commerce Oct. 20, 2015) .....................................................21-22

*Supercalendered Paper From Canada: Preliminary Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 45,951 (Dep't Commerce Aug. 3, 2015) .................................21-22

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

1.    Average Useful Life ("AUL")

2.    Cold-Rolled ("CR")

3.    Corrosion Resistant ("CORE")

4.    Countervailing Duty ("CVD")

5.    Dongkuk Steel Mill Co., Ltd. ("DSM")

6.    Government of Korea ("GOK")

7.    Hot-Rolled ("HR")

8.    Internal Revenue Service ("IRS")

9.    Korean Won ("KRW")

10.   Period of Review ("POR")

11.   Supercalendared ("SC")

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| HYUNDAI STEEL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **NON-CONFIDENTIAL** |
| | ) | Proprietary |
| v. | ) | Information |
| | ) | Removed from |
| UNITED STATES, | ) | Page 25 |
| | ) | |
| Defendant, | ) | |
| | ) | Court No. 21-00304 |
| and, | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## PLAINTIFF HYUNDAI STEEL COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

In accordance with Rule 56.2 of the Rules of this Court, and the October 1, 2021 scheduling order, Plaintiff Hyundai Steel Company ("Hyundai Steel" or "Plaintiff") files this brief in support of its Rule 56.2 motion for judgment upon the agency record. Order Granting Scheduling Order, *Hyundai Steel Company v. United States* (Ct. Int'l Trade Oct. 1, 2021), ECF No. 24. As discussed below, the U.S. Department of Commerce's ("Commerce") *Final Results* are

1

unsupported by substantial evidence and otherwise not in accordance with law.

I.   *Statement Pursuant To Rule 56.2*

The administrative determination under review is Commerce's *Final Results* in the countervailing duty ("CVD") administrative review of certain corrosion-resistant steel products ("CORE" or "subject merchandise") from the Republic of Korea, which covered entries of subject merchandise into the United States between January 1, 2018 and December 31, 2018. *See Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 29,237 (Dep't Commerce June 1, 2021) (Appx1080–1082), and accompanying Issues and Decision Memorandum (Appx1037–1079).

II.  *Issues Of Law Presented And Reasons For Contesting The Administrative Determination*

1.   Whether Commerce's determination that a countervailable benefit was provided to Hyundai Steel from the provision of port usage rights by the Government of Korea ("GOK") is unsupported by substantial evidence and otherwise not in accordance with law, where the estimated value of the port usage rights did not exceed Hyundai

2

Steel's construction costs for building the port at North Incheon Harbor and were provided as compensation for Hyundai Steel being required under Korean law to revert ownership of the port to the GOK after construction was complete.

III.   *Statement Of Facts*

On September 9, 2019, Commerce initiated an administrative review of the CVD order on CORE from Korea.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 47,242 (Dep't Commerce Sept. 9, 2019).  Commerce selected Hyundai Steel and Dongbu Steel Co., Ltd./Dongbu Incheon Steel Co., Ltd. as the mandatory respondents in this administrative review.  *See* Appx1835.

In the "Programs Not Used Or Providing No Measurable Benefits" section of its response to Commerce initial questionnaire, Hyundai Steel responded to Question 27, which listed the program "GOK Infrastructure Investment at Incheon North Harbor."[1]  Hyundai Steel

---

[1] Although Hyundai Steel included a separate claim regarding the sewerage usage program, it is not separately including facts regarding this claim because Defendant has already issued a remand determination that reverses its decision to treat this program as countervailable.

reported that between March 2003 and January 2007, it paid for and facilitated the construction of a port facility at North Incheon Harbor and received reimbursements from the GOK between 2004 and 2007. Appx6287-6292.  Ownership of the port facility reverted to the GOK in 2007 as required under Article 15 of the Harbor Act.  *See* Appx14765 n.2.  However, because Hyundai Steel had financed and constructed the wharf at North Incheon Harbor, Hyundai Steel acquired the right to collect fees from third-party users (although no other party had used the harbor to date).  Appx6289.  Hyundai Steel further noted that it received berthing income from shipping companies and reported the total amount of berthing income it received from 2007 (when construction of the port was complete) through the period of review ("POR").  Appx6289, Appx8505.

On February 6, 2020, the GOK timely filed its response to Commerce's initial questionnaire, corroborating Hyundai Steel's reporting on the Incheon Harbor program.  Appx4677-78.  The GOK reported the amount of direct reimbursements Hyundai Steel received for constructing the port between 2004 and 2007 and noted that Commerce had previously examined this program in prior proceedings

4

to find that Hyundai Steel received no measurable benefit from these payments.  Appx4678-79.

Approximately nine months after filing their initial questionnaire responses, Commerce issued supplemental questionnaires to both Hyundai Steel and the GOK regarding the Incheon Harbor program. *See* Appx21262-64; Appx21265-67.  Both questionnaires referenced Commerce's final results in *Certain Hot-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review, 2017*, 85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020), and accompanying Issues and Decision Memorandum ("*HR from Korea 2017*") at Comment 6, in which Commerce relied on facts available ("FA") and adverse facts available to conclude that Hyundai Steel received a countervailable benefit from the provision of port usage rights at the port at Incheon Harbor.

On October 30, 2020, Hyundai Steel timely responded to all but Questions 2.a and 2.b of Commerce's supplemental questionnaire and on November 4, 2020, Hyundai Steel timely responded to these outstanding questions.  Appx14746-14759; Appx15182-15269.  In these responses, Hyundai Steel described the nature of the "fees" that

Commerce had countervailed in *HR from Korea 2017* and explained how they were calculated. Appx14752-56; Appx15166–15174. Hyundai Steel again reiterated that these fees were not in fact collected during the POR. *Id.*

On November 4, 2020, the GOK also timely responded to Commerce's supplemental questionnaire on the Incheon Harbor program, providing the requested responses to the Standard Questions Appendix and a detailed explanation of how these "fees" that Hyundai Steel could have, but did not, collect were calculated. *See* Appx14765-81. In its response, the GOK described in detail how Hyundai Steel's reimbursement schedule was calculated based on the total costs it incurred to build the port. Specifically, the GOK calculated the period during which Hyundai Steel would be entitled to its port usage rights—that is, the ability to use and operate the port and collect certain fees from third parties until it recuperated its construction costs. As the GOK described, the formula used to calculate the term of the agreement between Hyundai Steel and the GOK consists of the following elements: (i) completion year of the construction, (ii) end year of the time period, (iii) the amount of the original investment in construction, (iv) revenue

6

earned through operating the wharf on an annual basis, (v) annual operating costs, and (vi) revenue earned through ancillary business. Appx14775-76.

As shown in the revised agreement with the GOK, the agreement estimates the amount of berthing and unloading fees Hyundai Steel could collect until it was reimbursed for the costs of constructing the port. Appx14805-14937. The revised agreement estimates the volume and type of cargo for which Hyundai Steel could charge unloading fees, and multiplied those by the projected future unit prices to produce a reimbursement schedule. Appx14928-14937 (Appendices 8–10). In addition, the reimbursement schedule also factored in estimated future operating costs. *Id.* Considering all of these factors, Hyundai Steel and the GOK estimated that it would take 41 years and 8 months for Hyundai Steel to fully recoup its costs for constructing the port.

On November 30, 2020, Commerce issued more supplemental questionnaires to both Hyundai Steel and the GOK on the Incheon Harbor program, to which both Hyundai Steel and the GOK timely responded on December 14, 2020. *See* Appx16424-16752; Appx16753-16769. In their responses, Hyundai Steel and the GOK clarified that

Hyundai Steel does not use the port "for free" and that it was not "exempt" from any payable fees otherwise due as a result of the alleged "free usage rights." Appx16429; Appx16759-61. Hyundai Steel emphasized that it, in fact, pays fees to the GOK for its use of the port. Appx16761. The GOK also noted that, as of the end of 2018, Hyundai Steel has acquired "far less" value than the amount it originally invested constructing the port through the exercise of its port rights. Appx16433.

Prior to issuing these questionnaires, however, Commerce issued its *Preliminary Results* on November 17, 2020, which were published in the Federal Register on November 23, 2020. *See Certain Corrosion-Resistant Steel Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review; 2018*, 85 Fed. Reg. 74,692 (Dep't Commerce Nov. 23, 2020) ("*Preliminary Results*"), Appx1035–1036, and accompanying Decision Memorandum, Appx1000–1027. Commerce preliminarily determined that the provision of port usage rights at Incheon Harbor constituted a countervailable subsidy. Appx1022–24. For this "program," Commerce calculated an *ad valorem* subsidy rate of 0.01 percent. *Id.* In total, Commerce preliminarily

8

determined that Hyundai Steel received a countervailable subsidy rate of 0.51 percent *ad valorem.  See* Appx1035.  This was just over the *de minimis* threshold under Commerce's regulations.  *See* 19 C.F.R. § 351.106(c).

On May 4, 2021, Hyundai Steel filed its case brief, arguing that Commerce's determination that Hyundai Steel's port usage rights at Incheon Harbor were countervailable was in error.  First, Hyundai Steel argued that Commerce failed to properly consider Hyundai Steel's port usage rights in the context of the costs Hyundai Steel incurred building the port at Incheon Harbor.  *See* Appx20589–20604.  In doing so, Hyundai Steel argued that Commerce's analysis of the compensation Hyundai Steel received for building and then ceding ownership of the port failed to address whether said compensation was excessive as is required under Commerce's precedents.  *Id.*

On May 24, 2021, Commerce issued the *Final Results*, which were published in the Federal Register on June 1, 2021.  *See* Appx1080–1082.  In the *Final Results*, Commerce continued to find that Hyundai Steel's port usage rights were countervailable.  Appx1056–1065.  Commerce denied that Hyundai Steel's right to collect usage fees should

9

be viewed in light of Hyundai Steel's substantial construction costs and stated that its determination in the instant proceeding was consistent with its precedents.  Appx1058–1061.  Thus, in the *Final Results*, Commerce continued to calculate an *ad valorem* subsidy rate of 0.51 percent for Hyundai Steel.  Appx1081.  This was just over the *de minimis* threshold, as stated above.  This appeal followed.

IV.    *Summary Of Argument*

In the *Final Results*, Commerce had no legal basis to find that Hyundai Steel received a countervailable benefit from the provision of port usage rights.  Commerce's decision ignores its own practice with respect to port usage programs in Korea where it has found that port usage rights may be countervailable only if the resulting benefit was "excessive."  Commerce has consistently applied this excessive benefit framework in numerous cases but refused to do so in Hyundai Steel's case.  When this excessive benefit standard is applied, it is clear that Hyundai Steel's port usage rights are not excessive and were calculated to last only as long as necessary for Hyundai Steel to recoup the costs incurred in constructing the port.  Thus, under Commerce's own standard, Hyundai Steel's port usage rights are not countervailable.

10

Additionally, there is no lawful basis to treat these port usage rights as providing a countervailable benefit because they were provided by the GOK as repayment of a debt and were not a gift-like transfer of funds. Hyundai Steel paid to build the port and then was required to revert ownership of the port to the GOK. Receiving compensation for this taking of property is not a countervailable benefit to Hyundai Steel. Commerce erred in treating it as such and its arguments to the contrary rely on a distorted view of the program and inapposite cases.

V.    *Standard Of Review*

In reviewing a challenge to Commerce's determination in a CVD administrative review, the Court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i).

VI.   *Argument*

In order to find that a countervailable subsidy exists, Commerce must determine that a government authority has provided (i) a financial contribution, that (ii) confers a benefit that is (iii) specific. 19 U.S.C. § 1677(5)(B) & (5A). This case presents a challenge to

11

Commerce's determinations that Hyundai Steel received a benefit from the GOK's provision of port usage rights at Incheon Harbor.  Although Commerce calculated a relatively small benefit for this "program," this issue is of the utmost importance to Hyundai Steel given that it is the difference between receiving a *de minimis* subsidy margin or one that is just above *de minimis*.  *De minimis* means Hyundai Steel receives refunds of all the countervailing duty cash deposits it paid in calendar year 2018; over *de minimis* means it does not.  *See* 19 C.F.R. § 351.106(c).

> A.   *Commerce's Determination That The GOK's Provision Of Port Usage Rights Provides A Countervailable Benefit Is Unsupported By Substantial Evidence And Is Otherwise Contrary To Law.*

In the *Final Results*, Commerce found that the port usage rights program provides a financial contribution in the form of revenue foregone because the GOK gave Hyundai Steel the right to collect berthing income and harbor facility usage fees, which otherwise would have been collected by the GOK.  Appx1058-59.  Commerce also found that the program to be specific under section 771(5A)(D)(iii)(I) of the Act because the actual recipients were limited in number, and that a benefit existed under section 771(5)(E) of the Act in the amount of the fees

12

exempted that were reported by Hyundai Steel. *Id.* In doing so, Commerce did not find relevant the undisputed fact that the port usage rights and resulting income/fees that Hyundai Steel collected were provided by the GOK as reimbursement for the construction costs incurred by Hyundai Steel in building the port that was required to be reverted to the GOK under Korean law. Nor did Commerce consider that the length of the reimbursement schedule was calibrated to only reimburse Hyundai Steel for its construction costs and nothing more. Hyundai Steel believes that this decision is not supported by substantial evidence and is otherwise not in accordance with law.

> 1. *There Is No Evidence That The Port Usage Rights Were Excessive And Thus They Provided No Countervailable Benefit.*

Commerce seeks to support its decision to treat the GOK's provision of port usage rights to Hyundai Steel as a countervailable benefit by claiming that this decision is consistent with prior cases where it has addressed the same or similar programs. Appx1058-60. A close look at these prior cases reveals that they are either inapposite or actually support the conclusion that Hyundai Steel did *not* receive a

countervailable benefit from the GOK's provision of port usage rights to compensate Hyundai Steel for its construction costs.

The first line of cases relied upon by Commerce are Korean cases in which it has examined the provision of port usage rights to support its treatment of Hyundai Steel's rights as a "recurring grant program." Appx1024 n.173; Appx1058 n.102 (citing *HR from Korea 2017* at Comment 6; *Notice of Final Results of Countervailing Duty Administrative Review: Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea*, 72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007), and accompanying Issues and Decision Memorandum ("*CTL Plate from Korea 2005*") at 6-7 and Comment 1; *Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review; 2011*, 78 Fed. Reg. 55,241 (Dep't Commerce Sept. 10, 2013), and accompanying Decision Memorandum ("*CORE from Korea 2011*") at 11, unchanged in *Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2011*, 79 Fed. Reg. 5,378 (Dep't Commerce Jan. 31, 2014); and then citing *Notice of Final Affirmative Countervailing Duty*

14

*Determination: Certain Cold-Rolled Carbon Steel Flat Products From the Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002), and accompanying Issues and Decision Memorandum ("*CR from Korea 2000*") at 20 and Comment 11).

On its face, this appears to be an extensive line of cases where Commerce has addressed the port usage fee program in Korea and found the provision of port usage rights to provide a countervailable benefit.  However, upon closer inspection these cases reveal an evolving standard for analyzing this program that finds a countervailable benefit to exist only if the period of port usage rights provided by the GOK is excessive and thereby leads to excessive reimbursement for construction costs incurred by the Korean respondent.  Commerce unreasonably applied this "excessive benefit" standard to Hyundai Steel in the *Final Results*.  Appx1059.  Had this established "excessive benefit" standard been correctly applied to Hyundai Steel it would have resulted in a finding of no countervailable benefit from the provision of port usage rights by the GOK.  A brief summary of the history of this issue in Korea is necessary to understand how Commerce's practice has evolved.

15

In *Stainless Sheet from Korea*, Commerce reviewed the port usage rights program under the same Harbor Act that governs Hyundai Steel's port usage rights in this case, and found that such port usage rights were *not* countervailable. *Final Affirmative Countervailing Duty Determination: Stainless Steel Sheet and Strip in Coils From the Republic of Korea*, 64 Fed. Reg. 30,636, 30,649 (Dep't Commerce June 8, 1999) ("*Stainless Sheet from Korea*"). In that case, Commerce determined that, by law, ownership of such port facilities must be reverted to the GOK and, by law, the company that builds the facility then "has the right to free usage of that facility and the ability to collect fees from other users of the facility." *Id.* at 30,649. Every company that must revert the facility that it built is granted this right and this right only extends until the company "recaptures its cost of constructing the facility." *Id.* Accordingly, Commerce determined that the provision of these port usage rights under the Harbor Act were *not* countervailable even if a company constructs a harbor facility for its own use. *Id.* ("{U}nder the Harbor Act, any company within any industrial sector is eligible to construct infrastructure *necessary for the operation of its business* provided that it receives approval by the

16

Administrator of the Maritime and Port Authority to build the facility." (emphasis added)).  *Id.*

A few years later, Commerce revisited the port usage program in Korea once again.  In that case, Commerce articulated an "excessive benefit" standard for determining whether a benefit exists.  Specifically, in *CR from Korea 2000*, Commerce countervailed the port usage fee exemptions Dongbu received because Commerce determined that the "excessive exemption period" of seventy years granted to Dongbu constituted revenue foregone because Dongbu "received more than just a limited exemption on its harbor fee{,} {i}t also received compensation which *lasted longer than the useful life of the constructed assets.*"  *CR from Korea 2000* at 20 and Comment 11 (emphasis added); *see also* Appx1059 (citing *CORE from Korea 2011* at 11 (finding that Dongbu's port usage fee exemptions were countervailable because of the "excessive exemption period of 70 years").  The "excessive benefit" standard was also later applied in *CTL Plate from Korea 2005* at 6-7 and Comment 1, where Commerce determined that Dongkuk Steel Mill Co., Ltd.'s ("DSM")  "free use" period of fifty-years "is so long that it effectively renders DSM the owner of the facility" because the "free use"

17

period constituted "a period of time so long" that the GOK's

compensation outlasts the useful life of the constructed assets and

"effectively renders ownership of the facility to DSM." Appx1059.

Taken together, these cases stand for the proposition that port

usage rights (including exemptions) received for the use of ports

constructed by a Korean respondent and reverted to the GOK as

required by law, will not be countervailable unless the reimbursements

are excessive based on the length of the exemption period.[2]  Conversely,

if the length of the exemption period is not excessive then it follows that

the provision of these port usage rights do not provide a countervailable

benefit.  Far from supporting Commerce's determination in this case,

these cases actually demonstrate the error in Commerce's analysis.

Applied to the *Final Results*, these cases would require a finding that

Hyundai Steel's port usage rights are *not* countervailable.

Hyundai Steel was granted port usage rights for the facility it

constructed at Incheon Harbor for approximately 41 years and 8

---

[2] Commerce also cites to *HR from Korea 2017* as support for its decision to treat this program as one that provides recurring benefits. *See* Appx1058 n.102.  This case, however, was based in part on facts available and is currently on appeal before this court.  *See* Ct. No. 20-03799.

months.  Appx6267.  This is well short of even the IRS AUL period for a

port as used in *CTL Plate from Korea 2005*, and far shorter than

Dongbu's "excessive exemption period" in *CR from Korea 2000* and

*CORE from Korea 2011.*  Furthermore, the length of the port usage

rights granted to Hyundai Steel was calibrated to reimburse it for its

construction costs and nothing more.  Appx14766–14769, Appx14774–

14777.  Specifically, the 41 year and 8 month period was calculated to

be a reasonable period by which Hyundai Steel could recoup its

investment.  Appx14766–14769.  Importantly, as the GOK noted,

*regardless* of whether Hyundai Steel fully recuperates its costs,

Hyundai Steel will no longer possess port usage rights after this period

is over.  Appx14767.

 In response to this argument, Commerce attempts to blur the

lines of its excessive benefit standard by claiming that Hyundai Steel's

41 years and 8 months period is "similar to the extended periods of 50 to

70 years . . ., which {Commerce} determine{d} to be excessive and thus

provide a benefit."  Appx1059.  This is not correct.  The fifty to seventy

year periods involved in cases such as *CR from Korea 2000* and *CTL

Plate from Korea 2005*, were found to be excessive because they

19

exceeded the AUL periods for the assets, and effectively granted
ownership to the respondent. *See CR from Korea 2000* at 49; *CTL Plate
from Korea 2005* at 11. In contrast, Hyundai Steel was granted port
usage rights for the facility it constructed at Incheon Harbor for
approximately 41 years and 8 months. Appx6289. This period is
shorter than the AUL period for a port as used in *CTL Plate from Korea
2005*, and the "excessive exemption period" in *CR from Korea 2000*. As
discussed, the length of the port usage rights granted to Hyundai Steel
was calibrated specifically to reimburse it for its construction costs and
nothing more. Appx14776.

The *Final Results* lack substantial evidence because Commerce
fails to explain or support how the collection period in this case is
excessive. Commerce merely alleged that the collection period in this
case is similar to the fifty-to seventy-year exemption periods from *CR
from Korea 2000, CTL Plate from Korea 2005*, and *CORE from Korea
2011. Final Results IDM* at 21. Yet unlike each of those cases, here
Commerce failed to compare the collection period to the relevant AUL
period. Had Commerce conducted such a comparison, the 41 years and
8 months collection period would not exceed the AUL for docks and

20

wharves, which as noted in *CTL Plate from Korea 2005*, is fifty years. *See CTL Plate from Korea 2005* at 11.  Here, the collection period is not "so long a period that it effectively renders ownership of the facility" to Hyundai Steel because it does not exceed the fifty year AUL period of the underlying port assets.  *See CTL Plate from Korea 2005* at 11. Commerce's cursory analogy to the fifty- to seventy-year exemption periods provided in other cases fails to support the *Final Results*, especially given the total lack of explanation as to how the collection period provided to Hyundai Steel is materially similar to periods that exceed the AUL of the assets.  Instead, this case is similar to *Stainless Sheet from Korea*, in which the Department determined that the provision of port usage rights pursuant to the Harbor Act was *not* countervailable when it did not exceed the amount of costs incurred to build the port.  *Stainless Sheet from Korea*, 64 Fed. Reg. at 30,649.

The second set of cases that Commerce cites are *SC Paper from Canada* and *Quartz Surface Products from Turkey*.  Appx1058. *Supercalendered Paper From Canada: Preliminary Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 45,951 (Dep't Commerce Aug. 3, 2015), and accompanying Decision Memorandum at

21

25 ("*SC Paper from Canada*"), unchanged in *Supercalendered Paper From Canada: Final Affirmative Countervailing Duty Determination*, 80 Fed. Reg. 63,535 (Dep't Commerce Oct. 20, 2015), and accompanying Issues and Decision Memorandum at 26 and 28; *Certain Quartz Surface Products From the Republic of Turkey: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 54,841 (Dep't Commerce Oct. 11, 2019), and accompanying Decision Memorandum at 10–11 ("*Quartz Surface Products from Turkey*"), unchanged in *Certain Quartz Surface Products From the Republic of Turkey: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, In Part*, 85 Fed. Reg. 25,400 (Dep't Commerce May 1, 2020), and accompanying Decision Memorandum.  These cases are inapposite.

Under the port usage program, Hyundai Steel receives port usage rights to reimburse it for the costs of constructing the port that it incurred *because* it cannot retain title to the port after construction is completed.  *See* Appx6288; Appx14913; *see also Stainless Sheet from*

*Korea*, 64 Fed. Reg. at 30,649 ("Because a company must transfer to the government its infrastructure investment, the GOK . . . grants the company free usage of the facility and the right to collect fees from other users of the facility until the company recovers its investment cost.").  In contrast, in *SC Paper from Canada* and *Quartz Surface Products from Turkey*, there is no indication that any of the grants from the programs at issue were provided as compensation for constructed assets to which the companies no longer retain title.  Instead, these cases just involve normal non-recurring grants.  This is an important distinction that makes these cases easily distinguishable from the port usage program at issue in this appeal.

> 2.   *Port Usage Rights Are Received As Repayment Of A Debt And Thus Do Not Provide A Benefit To Hyundai Steel.*

There is no basis to find that Hyundai Steel received a countervailable benefit from the port usage rights.  The port usage rights were provided to Hyundai Steel as payment of a debt owed by the GOK for the public taking of a port that Hyundai Steel built at significant cost to the company.  Commerce claims that a benefit was conferred pursuant to 19 C.F.R. § 351.503(b), which reads:  "the

Secretary normally will consider a benefit to be conferred where a firm

pays less for its inputs (e.g., money, a good, or a service) than it

otherwise would pay in the absence of the government program, or

receives more revenues than it otherwise would earn." Appx1059; 19

C.F.R. § 351.503(b)(1).  This court has held that "{t}he touchstone of

Section 1677(E), from which this regulation is derived, is that what the

company received somehow exceeded what the company paid or should

have paid." *Government of Sri Lanka v. United States*, 308 F. Supp. 3d

1373, 1383 (Ct. Int'l Trade 2018) ("*GOSL*").  In this case, there is no

countervailable benefit from Hyundai Steel's port usage rights.

Korean law requires that certain infrastructure be under

government control, such as railroads, parks, and other types of public

works.  Harbors and related infrastructure, such as wharfs, are subject

to this law and must be controlled and owned by the GOK.  Appx14765

n.2 (providing Article 15 of the Harbor Act, which states that

"ownership of land developed or harbor facilities installed . . . shall vest

in the State upon completion of the harbor project").  However, there

are tremendous costs in establishing public infrastructure works, such

as harbors, and thus the GOK allows private entities to construct such

infrastructure at their own costs through the Harbor Act and the Act on the Private Participation in Infrastructure (also known as the Private Participation in Social Infrastructure Act).[3]  Appx14972–15016.  In order to avoid direct costs but still abide by the legal requirement that public infrastructure works be owned by the government, the GOK reimburses private entities that construct public works.  *Id.*

In 2001, Hyundai Steel entered into an agreement with the Ministry of Oceans and Fisheries to construct a wharf at North Incheon Harbor.  Appx6288.  Under the agreement, the GOK incurred no direct expenses in relation to the construction of the port facility, *id.*, while the construction costs were borne by Hyundai Steel, Appx14766–14769.  The only GOK contributions during construction of the facility were grants that Hyundai Steel received over the five-year construction period totaling [                    ] KRW, which covered only a fraction of the costs to construct the port.  Appx6288.  As additional compensation for its construction costs, and pursuant to Article 15 of the Harbor Act and Article 25 of the Act on the Private Participation in Infrastructure,

---

[3] In Hyundai Steel's Initial Questionnaire Response, it refers to this act as the "Act on Private Participation in Infrastructure" and provided the relevant provisions in Exhibit I-22.  *See* Appx8526–8586.

25

Hyundai Steel and the GOK agreed to a reimbursement schedule, under

which Hyundai Steel acquired the right to collect certain fees until its

construction costs had been repaid.  The parties calculated, based on

future fees estimated at the time of the agreement, that it would take

41 years and 8 months, or up to and including 2047, to compensate

Hyundai Steel for the construction costs.  *See* Appx14766–14769,

Appx14774–14778.  In other words, Hyundai Steel and the GOK agreed

that through providing port usage rights to Hyundai Steel, the GOK

would be able to provide just compensation for the harbor facility.

This is similar to the way in which the Fifth Amendment of the

United States Constitution requires that the government provide just

compensation prior to obtaining ownership of private property intended

for public use.  U.S. Const. amend. V; *Dolan v. City of Tigard*, 512 U.S.

374, 384 (1994) ("One of the principal purposes of the Takings Clause is

'to bar Government from forcing some people alone to bear public

burdens which, in all fairness and justice, should be borne by the public

as a whole.'") (quoting *Armstrong v. United States*, 364 U.S. 40, 49

(1960)).  Contrary to Commerce's claim that "the record does not

demonstrate that the main purpose of building the port was for public

26

good or any governmental functions," Appx1059, the record shows that the Incheon Harbor development project was done "to save and spend the national budget more efficiently," specifically by encouraging private investment in infrastructure, Appx14766.  This demonstrates that the port facility was built at least in part for the public good.  The port usage rights that the GOK provided to Hyundai Steel at the North Incheon Harbor were thus part of Hyundai Steel's just compensation for building the port and reverting the port to the GOK.

The reimbursement period *assumes* that Hyundai Steel would collect certain fees from other entities that used the port and this period is calculated so that it is only as long as necessary for Hyundai Steel to recoup its costs, as estimated at the time of agreement.  Appx14774-76.  However, Hyundai Steel has not collected certain fees from other entities, and every year that Hyundai Steel does not collect these fees, the less likely it becomes that it will fully recover its costs before the reimbursement period expires.  Appx14754-14756; Appx15188-96.  As the GOK reported, Hyundai Steel has acquired "far less" value than the amount it originally invested through the exercise of its port rights.  Appx16433.  This measured and tailored reimbursement period for only

27

as long as necessary to reimburse Hyundai Steel for its construction costs does not result in a countervailable benefit.

In the *Final Results*, Commerce clarified that it considers that a benefit is conferred to Hyundai Steel through the provision of port usage rights under 19 C.F.R. § 351.503(b), the catch-all provision of Commerce's regulations. Appx1059–1060. That is, Commerce considers that Hyundai Steel receives a benefit because it "pays less for inputs . . . than it otherwise would pay in the absence of the government program, or receives more revenues than it otherwise would earn." 19 C.F.R. § 351.503(b)(1). However, this conclusion is only logical if Hyundai Steel's port usage rights are viewed in isolation from the enormous expenses and burden Hyundai Steel incurred to build the port in the first place. As explained above, Hyundai Steel's right to operate and collect certain fees at the port at Incheon Harbor was granted as reimbursement for Hyundai Steel's costs for constructing the port, which the GOK would have had to incur but for Hyundai Steel's participation in the program. Thus, when broken down into its essence, the benefit of this program, to the extent one exists, is in the form of a repayment of the GOK's debt to Hyundai Steel. It is

28

within this context that Hyundai Steel's port usage rights should be viewed when determining whether they are countervailable. This court's decision in *GOSL* is on point.

In *GOSL*, this court found that repayments of a debt is distinct from payments through grants, loans, or equity infusions; the three of which "yield a net increase to the recipient's capital base at the time of the infusion, whereas interest-free repayment of a debt does not." *GOSL,* 308 F. Supp. 3d at 1381. The court reasoned that in such cases where the respondent is "serving as a payment vehicle for" a government program, the respondent is "effectively providing interest-free loans to {the government} . . . to {the respondent's} detriment, rather than its benefit," within the meaning of 19 U.S.C. § 1677(5)(E). *Id.* at 1382 (finding repayments to the respondent for the difference between the market price for rubber and the mandated "above market 'guaranteed price'" did not provide a benefit). The court concluded that the reimbursement program at issue was not properly assessed as a grant under 19 C.F.R. § 351.504 because the reimbursement payments "did not constitute a gift-like transfer, but rather the interest-free repayment of a debt." *Id.* at 1383. Thus, the court held that the

29

repayments at issue "satisf{y} neither the statutory definition, nor the regulatory interpretation of what constitutes a benefit," reversing Commerce's determination the repayments were countervailable. *Id.* at 1384. The court also noted that Commerce was "not authorize{d}. . . to ignore clear, readily available, and already-verified record evidence that a transfer of funds constituted repayment of a debt." *Id.* at 1381.

Applied to this case, these principles make clear that the port usage rights granted to Hyundai Steel as repayment for its construction of the port at Incheon Harbor are similarly not countervailable. As mentioned above, the goal of the Act on the Private Participation in Infrastructure is to allow for the construction of public infrastructure through private investment. Appx 4677-78; Appx14765-66; Appx14972 ("The purpose of this Act is to contribute to the development of the national economy by promoting private investment in the social overhead capital facilities and thus striving for their positive and efficient expansion and operation."). As such, under the agreement between the GOK and Hyundai Steel, the GOK incurred no direct expenses in relation to the construction of the port facility, while Hyundai Steel bore the brunt of incurring immense expenses.

30

Appx6287-88; Appx14766–14769.  Since the GOK is required to assume ownership of harbor facilities constructed, Hyundai Steel "serv{ed} as a payment vehicle for" the construction of public infrastructure, *i.e.*, the port facility.  *GOSL*, 308 F. Supp. 3d at 1382.  Viewed in this context, unlike a grant, loan, or equity infusion, the provision of port usage rights to Hyundai Steel "satisfies neither the statutory definition, nor the regulatory interpretation of what constitutes a benefit."  *Id.* at 1384.

In the *Final Results*, Commerce attempted to distinguish Hyundai Steel's port usage rights from the repayments issued in *GOSL* by arguing that construction of the port and Hyundai Steel's reimbursements were not "implemented for the purpose of supporting other beneficiaries" and that Hyundai Steel was not "required" to build the port whereas the participants in the program at issue in *GOSL* were required to pay the above-market guaranteed price for natural rubber to benefit small farmers.  Appx1060-1061.  As discussed, the record shows that the Incheon Harbor development project that included the building of the port was done to "save and spend the national budget." Appx14766.  Thus, it was not built just to benefit Hyundai Steel.  The goals of both the Harbor Act, in part, and the Act on the Private

Participation in Infrastructure are to *help the GOK* construct social infrastructure and reduce pressure on the national budget from the costs of these projects. Appx14765-66, Appx14972. Additionally, the respondent in *GOSL* was "not *required* to rely on locally-sourced rubber," *GOSL*, 308 F. Supp. 3d at 1379 n.3 (emphasis added), but if it did, it was required to pay the above-market guaranteed price and wait to be reimbursed by the Government of Sri Lanka to its "detriment, rather than its benefit." Similarly, once Hyundai Steel built the port, it was required to revert ownership of the port to GOK and wait to be reimbursed. *Id. at* 1382 (emphasis added). Commerce's suggestion that "other beneficiaries" of the program must exist and that participation in the program must be mandatory in order to treat a benefit as a non-countervailable repayment of a debt twists the holding in *GOSL* to add requirements that were not the basis for the court's decision.

Even if Hyundai Steel built the port at Incheon Harbor solely for its own use, this fact alone does not excuse abandoning the excessive benefit analysis that Commerce has established through its precedents. In *Stainless Sheet from Korea*, Commerce explicitly stated that port usage rights received as a result of the requirements of the Harbor Act

32

are generally not countervailable even if a company constructs a harbor facility for its own use. *Stainless Sheet from Korea*, 64 Fed. Reg. at 30,649 ("{U}nder the Harbor Act, any company within any industrial sector is eligible to construct infrastructure *necessary for the operation of its business* provided that it receives approval by the Administrator of the Maritime and Port Authority to build the facility." (emphasis added)). The GOK is relieved of the direct and indirect costs of constructing a port, which makes the GOK a direct beneficiary of Hyundai Steel's assumption of the costs. As Commerce explained in *Stainless Sheet from Korea*, the GOK "does not have sufficient funds to construct all of the infrastructure a company may need to operate its business" and thus the GOK allows private entities to construct certain types of infrastructure that they are not legally allowed to own. *Id.* The court's decision in *GOSL* made no mention of "other beneficiaries," but rather the court concluded that in paying the above-market guaranteed price, the respondent was "serving as a payment vehicle" for the program to the company's "*detriment*, rather than its benefit." *GOSL*, 308 F. Supp. 3d at 1382. As explained above, allowing companies like Hyundai Steel construct social infrastructure that they are not legally

allowed to own, such as harbor facilities, relieves the GOK of the burden of financing and constructing the infrastructure itself. *See* Appx14765-66, Appx14972; *see also Stainless Sheet from Korea*, 64 Fed. Reg. at 30,649. Commerce's attempt to distinguish Hyundai Steel's case from the program at issue in *GOSL* for want of third party beneficiaries is without basis in the court's actual opinion.

While Commerce claims that there is no difference "between the program at issue and a program in which a government directly provides funding to a company to build a port for the company's benefit," Appx1059, this is not true. First, directly providing funding for a company to build a port would completely undermine one of the purposes of this GOK program, which is to "attract investments from the private sector instead of using {the} national budget in constructing social infrastructures and assets, with the purpose to save and spend the national budget more efficiently." Appx14765-66. Second, Commerce ignores the financial implications of reversion of ownership to the GOK. Specifically, companies like Hyundai Steel that construct harbor facilities under this program must first incur the cost on their own and then do not get the usual benefit of owning the asset on their

34

books.  The port built by Hyundai Steel has value and Hyundai Steel

will never be able to sell that asset in the future for remuneration

because it had to revert ownership to the GOK.  This is a significant

difference between the GOK providing funds to construct the port

directly for Hyundai Steel as opposed to Hyundai Steel building the

port, reverting ownership to the GOK, and receiving port usage rights

for a discrete period of time to recoup construction costs.

Finally, Commerce mischaracterizes Hyundai Steel's argument as

one requesting an "offset" to the cost of constructing the port in its

benefit analysis.  Appx1060.  This is a strawman.  Nowhere on the

record did Hyundai Steel ever cite to section 771(6) of the Act, 19 U.S.C.

§ 1671(6), or argue that the amount it invested in building the Incheon

North Harbor port should be treated as a statutory "offset" to the port

usage rights it received from the GOK as compensation for building the

port.  The argument that Hyundai Steel in fact made was that the

statutory and regulatory requirements for a benefit to be found in this

case have not been met, and that Commerce has failed to support and

explain its determination that a benefit has been conferred via the

collection of fees in light of the exchange between the GOK and

Hyundai Steel and the immense expenses that Hyundai incurred

building a port that ultimately belongs to the GOK.  Appx20589-604.

   Accordingly, this Court should find that Commerce's

determination that Hyundai Steel's port usage rights confer a

countervailable benefit is not supported by substantial evidence and is

not otherwise in accordance with law.

   B.   *The Court Should Sustain the Department's*
        *Redetermination Regarding The Alleged Reduction For*
        *Sewerage Fees.*

   On January 11, 2022, the Court granted Commerce's request for a

voluntary remand as to the determination to countervail the reduction

for sewerage fees program.  Order Granting Motion to Remand Case,

*Hyundai Steel Company v. United* States (Ct. Int'l Trade Jan. 11, 2022),

ECF No. 26.  On remand, Commerce reexamined its financial

contribution analysis for the reduction for sewerage fees program and

determined that the program is not countervailable.  Remand Results,

*Hyundai Steel Company v. United States* (Ct. Int'l Trade April 11,

2022), ECF No. 27 at 10.  Commerce released its Draft Redetermination

on March 14, 2022.  *Id.* at 10-11.  Hyundai Steel commented in support

of the Draft Redetermination and no party challenged Commerce's

analysis or conclusions therein. *Id.* On April 11, 2022, Commerce filed its Final Redetermination and continued to find that the reduction for sewerage fees program is not countervailable. *Id.* As no party raised issues with the Draft Redetermination at the agency level, the Court should enter judgment sustaining the Final Redetermination that the sewerage fees program is not countervailable.

VII. *Conclusion And Relief Requested*

    Based on the foregoing, Hyundai Steel respectfully requests that this Court (i) hold that Commerce's *Final Results* are unsupported by substantial evidence and otherwise not in accordance with the law; (ii) remand the case to Commerce with instructions to correct the errors identified by the Court; and (iii) for such other relief that the Court deems just and proper.

                            Respectfully submitted,

                            /s/ Brady W. Mills
                            Brady W. Mills
                            Donald B. Cameron
                            Julie C. Mendoza
                            R. Will Planert
                            Mary S. Hodgins
                            Eugene Degnan
                            Edward J. Thomas III
                            Jordan L. Fleischer
                            Nicholas C. Duffey

MORRIS, MANNING & MARTIN, LLP
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 216-4116

*Counsel to Plaintiff Hyundai Steel Company*

*Certificate Of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 7,147 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated:  July 18, 2022