NON-CONFIDENTIAL VERSION

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |
|---|
| HYUNDAI STEEL COMPANY,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br> and<br><br>NUCOR CORPORATION,<br><br>    Defendant-<br>    Intervenor. |

Before: Hon. M. Miller Baker, Judge

Court No. 21-00304

<u>NON-CONFIDENTIAL VERSION</u>

Business Proprietary Information Removed from Pages 2, 3, 5, 6

## <u>DEFENDANT-INTERVENOR NUCOR CORPORATION'S RESPONSE BRIEF</u>

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Maureen E. Thorson, Esq.
Tessa V. Capeloto, Esq.
Adam M. Teslik, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: September 29, 2022

Ct. No. 21-00304                                    NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND .................................................................. 1

III.  SUMMARY OF ARGUMENT ................................................. 5

IV.   ARGUMENT ...................................................................... 5

V.    CONCLUSION ................................................................. 15

i

Ct. No. 21-00304                              NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Government of Sri Lanka v. United States,*
  308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) ....................................... 14

**Statutes**

19 U.S.C. § 351.503.................................................................................. 1

19 U.S.C. § 1677(5)(A) ........................................................................... 1

19 U.S.C. § 1677(5)(B) ........................................................................... 1

19 U.S.C. § 1677(5)(C) ........................................................................... 1

19 U.S.C. § 1677(5)(D) ........................................................................... 1

19 U.S.C. § 1677(5)(E) ........................................................................... 1

**Administrative Materials**

*Certain Cold-Rolled Carbon Steel Flat Products From the*
  *Republic of Korea,*
  67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002) ........................... 6

*Certain Cold-Rolled Steel Flat Products From the*
  *Republic of Korea,*
  86 Fed. Reg. 7,063 (Dep't Commerce Jan. 26, 2021) ......................... 10

*Certain Cut-to-Length Carbon-Quality Steel Plate from the*
  *Republic of Korea,*
  72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007) .......................... 8

*Certain Hot-Rolled Steel Flat Products From the*
  *Republic of Korea,*
  85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020) ........................... 9

*Corrosion-Resistant Carbon Steel Flat Products From the*
   *Republic of Korea*,
   78 Fed. Reg. 55,241 (Dep't Commerce Sept. 10, 2013)..........................8

**Ct. No. 21-00304**                                    NON-CONFIDENTIAL VERSION

# **GLOSSARY**

**AUL**

Average Useful Life

**Commerce**

U.S. Department of Commerce

**CORE**

Corrosion-Resistant Steel Flat Products

**DSM**

Dongkuk Steel Mill Co., Ltd.

**GOK**

Government of Korea

NON-CONFIDENTIAL VERSION

## I.   <u>INTRODUCTION</u>

On behalf of Defendant-Intervenor Nucor Corporation (Nucor"), we respectfully submit this response to the July 18, 2022 opening brief submitted by Plaintiff Hyundai Steel Company ("Hyundai"). *See* Pl. Hyundai Steel Co.'s Br. in Supp. of its Mot. for J. on the Agency R. (July 18, 2022), ECF 34-2 ("Hyundai's Brief"). Nucor incorporates by reference the responsive arguments made in Defendant the United States' September 15, 2022 brief, and offers here additional defenses of the challenged determination. *See* Def.'s Resp. to Pl.'s R. 56.2 Mot. for J. Upon the Agency R. (Sept. 15, 2022), ECF 37.

## II.   <u>BACKGROUND</u>

Under the U.S. trade remedy laws, a subsidy exists wherever a government authority (1) provides a financial contribution and (2) thereby confers a benefit upon the recipient. 19 U.S.C. §§ 1677(5)(A)-(E). Financial contributions can take a number of forms, including a government's decision to forego revenue that would otherwise be due to it. *Id.* § 1677(5)(D). Any kind of benefit accruing to the respondent as result of such a contribution is a "benefit" for purposes of the law. *Id.* § 677(5)(E); *see also Id.* § 351.503.

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED

Ct. No. 21-00304                                    NON-CONFIDENTIAL VERSION

This appeal arises from the 2018 administrative review of the countervailing duty order on corrosion-resistant steel flat products ("CORE") from the Republic of Korea ("Korea"), conducted by the U.S. Department of Commerce ("Commerce"). Hyundai challenges Commerce's determination to countervail certain revenue foregone by the Government of Korea ("GOK"), relating to the right to collect user fees for certain port facilities at North Incheon Harbor. Hyundai's Brief at 12-36.

The record indicates that to secure certain port facilities that would be advantageous to it, while considering that Korean law requires that all port facilities be owned by the GOK, Hyundai entered into an agreement with the GOK. *See, e.g.,* Appx1022-1023. Pursuant to the agreement, Hyundai constructed port facilities for which the GOK [

                                    ]. Appx1022-1023; Appx8221;
Appx8227; Appx8239-8244. Hyundai agreed to transfer ownership of the port facilities to the GOK; the GOK agreed to (1) allow Hyundai to use the port facilities without paying fees that Hyundai would otherwise owe the GOK as the facilities' owner, and (2) transfer the GOK's right to collect and retain fees from other users to Hyundai for a

2

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED

Ct. No. 21-00304                                  NON-CONFIDENTIAL VERSION

period of 41 years and 8 months. Appx1023; Appx1059; Appx8229-8230

([                              ]); Appx8239-8240; Appx8257-8259; Appx8401-8403.

Commerce preliminarily determined that Hyundai's arrangement with

the GOK provided a financial contribution and a benefit, because it

gave Hyundai the right to fees that otherwise only the GOK would have

the right to collect. Appx1023.

Hyundai argued in its case brief that the right to use the port

facilities free of charge provided it with no benefit, but was meant only

to compensate Hyundai for the costs of constructing the port facilities.

Appx20591-20604. Hyundai argued that the value of the free use right

was not "excessive" given the costs to Hyundai of constructing the port

facilities. Appx20591-20595. Hyundai further likened the value of the

free use right to the GOK's repayment of a debt to Hyundai.

Appx20595-20604.

In its rebuttal brief, Nucor pointed out that the GOK provided

Hyundai not only with the right to use the port facilities for free, but

the right to collect and retain fees from other users. Appx20780-20785.

While Hyundai's challenge to the preliminary results focused on the

free usage right, the separate right to collect and retain fees from other

3

users was itself a form of foregone government revenue. Appx20782. Further, Hyundai's actions with respect to the fee-collection right undermined its claim not to have received a financial contribution or benefit. Appx20782-20785.

In the final results, Commerce continued to find both a financial contribution and a benefit. Appx1057-1061. A financial contribution existed because the GOK had foregone collection of revenues it was entitled to collect, ceding the right to collect those revenues to Hyundai. Appx 1059. Commerce additionally explained that because Hyundai was entitled to collect fees without transmitting them to the GOK, a benefit was conferred. Appx1059-1060. Commerce explained that it would be inappropriate to offset this benefit by the amount of the funds that Hyundai expended in building the port facilities. Appx1060.

Commerce then explained why it did not view the GOK's provision of funds toward construction of the port facilities and its concession of fee-collection rights as akin to the Rubber Guarantee Price Scheme considered in Commerce's investigation into Sri Lankan tire production. Appx1060-1061. Specifically, Commerce explained that the Sri Lankan program required private actors to pay above-market prices for goods,

Ct. No. 21-00304                    NON-CONFIDENTIAL VERSION

and then await government reimbursement of a refund of the difference

between the above-market and market price. Appx1061. Here, however,

the GOK did not require Hyundai to buy anything, or to perform actions

to benefit others. *Id.* Rather, Hyundai built the port for its own benefit,

with government assistance. Appx1060-1061.

## III.  <u>SUMMARY OF ARGUMENT</u>

Hyundai does not persuade that Commerce erred in finding that

Hyundai benefited from the GOK's partial funding of Hyundai's port-

building activities and concession of fee-collection rights. Rather, for the

reasons described in the Government's response brief and the additional

reasons detailed below, the Court should affirm Commerce's

contribution and benefit findings regarding Hyundai's port facilities at

North Incheon Harbor.

## IV.  <u>ARGUMENT</u>

Hyundai, which has production facilities proximate to North Incheon

harbor, constructed port facilities there for which the GOK [

                                    ]. Appx1022-1023; Appx8221;

Appx8227; Appx8239-8244. To comply with Korean law requiring public

ownership of port facilities, Hyundai agreed to transfer ownership of

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED

**Ct. No. 21-00304**                    NON-CONFIDENTIAL VERSION

the port facilities to the GOK. *See, e.g.*, Appx 6287-6288. The GOK

agreed to allow Hyundai to use the port facilities without paying fees

that Hyundai would otherwise owe the GOK as the facilities' owner for

a period of 41 years and 8 months. Appx1023; Appx6288; Appx8240;

Appx8402. The GOK additionally transferred to Hyundai its right to

collect fees from other users of the port facilities for the same period of

time. Appx1023; Appx1059; Appx8229-8230 ([                    ]);

Appx8239-8240; Appx8257-8259; Appx8401-8403.

Hyundai argues that Commerce has previously found that "fee

exemptions" are countervailable only where they are "excessive" in

relation to "the useful life of the constructed assets" to which they relate.

Hyundai's Brief at 17 (quoting Issues and Decision Memorandum

accompanying *Certain Cold-Rolled Carbon Steel Flat Products From the

Republic of Korea*, 67 Fed. Reg. 62,102 (Dep't Commerce Oct. 3, 2002)

(final affirmative countervailing duty deter.) at 20, cmt. 11 ("*CR from

Korea 2000* IDM")); *see also id.* at 17-18 (collecting cases). Hyundai

argues that the port usage rights that it received are not set to last

longer than the useful life of the port facilities it constructed. *Id.* at 18-

21. Hyundai also argues that the rights' value was calibrated to

compensate it for construction costs, and thus should be treated as the GOK's repayment of a debt, rather than as a contribution benefiting Hyundai. *Id.* at 18-19, 21-36.

As detailed below, Hyundai has not shown any error in Commerce's findings.

As an initial matter, and as pointed out in Nucor's rebuttal brief, the principal precedents on which Hyundai relies involved situations in which a respondent was exempted from paying port usage fees of its own, but was not also given the right to collect fees from others. Hyundai's Brief at 17-18; *see also* Appx20782. For example, in the *CR from Korea 2000* IDM, Commerce noted that Korea's Harbor Act authorizes the GOK to provide private companies that build port facilities (and which must transfer ownership to the GOK under Korean law) with "free usage of the facility and the right to collect fees from other users of the facility . . . ." *CR from Korea 2000* IDM at 20. However, the respondent in that case received only the right to "free use" of the facilities in question through "exemptions of fees." *Id.* at 20, 49-50. Likewise, in the 2011 administrative review of the countervailing duty order on Korean CORE, the respondent (which was the same

company that was at issue in the *CR from Korea 2000* IDM) received the right to "free use of harbor facilities" from the GOK, in the form of "an exemption of harbor fees," but does not appear to have received any other rights. Issues and Decision Memorandum accompanying *Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea*, 78 Fed. Reg. 55,241 (Dep't Commerce Sept. 10, 2013) (preliminary results of countervailing duty admin. rev.; 2011) at 11.

Contrary to Hyundai's arguments, *see* Hyundai's Brief at 17-21, where a respondent receives not only the right to use port facilities itself for free, but the right to collect fees from others, Commerce has not determined whether a benefit exists by rotely comparing the length of those rights' endurance to the facilities' average useful life ("AUL"). Rather, Commerce has asked whether the GOK has allowed the respondent to exercise ownership-like rights over the facilities for an extended time period. *See* Issues and Decision Memorandum accompanying *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea*, 72 Fed. Reg. 38,565 (Dep't Commerce July 13, 2007) (final results of countervailing duty admin. rev.) at 6-7 ("*CTL Plate from Korea 2005* IDM"); *see also id.* at 11 ("{W}hat is at issue is

not the precise AUL of this specific pier, but whether {Dongkuk Steel Mill Co., Ltd.'s ("DSM")} 50-year lease of the pier, with terms that provide for the ability to charge unregulated user fees, is so long a period that it effectively renders ownership of the facility to DSM.")

Commerce followed this approach in the 2017 administrative review of the countervailing duty order on Korean hot-rolled steel flat products, which considered the same agreement between Hyundai and the GOK that is at issue here. While Commerce found that a financial contribution existed there as a result of an adverse inference, it also noted, in explaining its benefit calculation, that "once ownership {of the port facilities} reverted to the GOK, Hyundai Steel was authorized to operate the wharf for a specific period, regardless of the amount of fees collected and amount of the company's personal usage of the harbor facilities." Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 85 Fed. Reg. 64,122 (Dep't Commerce Oct. 9, 2020) (final results of countervailing duty admin. rev., 2017) at 7 ("*HR from Korea 2017* IDM"). In other words, the relevant issue was that the GOK provided Hyundai not just

with the ability to use the port for free, but with other ownership-like rights.

Commerce again examined this same agreement between the GOK and Hyundai in the 2018 administrative review of the countervailing duty order on Korean cold-rolled steel, and followed the same approach. Issues and Decision Memorandum accompanying *Certain Cold-Rolled Steel Flat Products From the Republic of Korea*, 86 Fed. Reg. 7,063 (Dep't Commerce Jan. 26, 2021) (preliminary results of countervailing duty admin. rev.; 2018) at 30-32 (unchanged in final). Commerce found – as here – that Hyundai not only was provided with free access to the port facilities, but with "the right to operate" those facilities, inclusive of "collect{ing} fees from third-party users . . . ." *Id.* at 31. Rather than look to the AUL of the port facilities to determine whether a benefit existed, Commerce looked to whether the agreement provided Hyundai with rights that would normally only accrue to the facilities' owner.

Commerce followed the same approach here. Appx1059. Commerce explained that prior cases involving not only free-usage rights but fee-collection rights were relevant because the agency treated the "fees collected from third parties . . . as recurring subsidies" in each of them.

*Id.* Commerce also noted that, as an additional point of relevance, these cases each involved the right to collect such fees over an "extended period." *Id.*

Hyundai argues that the nearly-42-year duration of its fee-collection rights is not "so long a period that it effectively renders ownership of the facility" to Hyundai. Hyundai's Brief at 21 (quoting *CTL Plate from Korea 2005* IDM at 11). However, Hyundai's only basis for this assertion is the facilities' presumed AUL of 50 years. *See id.*[1] But as Commerce has explained, it is not the facilities' AUL that controls the analysis. *CTL Plate from Korea 2005* IDM at 11. Rather, the question is whether Hyundai's agreement with the GOK gives Hyundai the right to act as *de facto* owner of the facilities for an extended period of time. *See id.*

Hyundai fares no better with its argument that by transferring ownership-like rights to Hyundai, the GOK was simply repaying a debt. Hyundai's Brief at 23-36. Hyundai argues that the port facilities at issue here are "public works" and that by building them, Hyundai allowed the

---

[1]     According to Internal Revenue Service Publication 946, the AUL for land improvements such as wharves and docks is not 50 years, but 20.  *See* Internal Revenue Serv., U.S. Dep't of Treasury, Publication 946 - How to Depreciate Property (Mar. 3, 2022) at 17 and 98, available at https://www.irs.gov/pub/irs-pdf/p946.pdf.

GOK "to spend the national budget more efficiently." *Id.* at 25-27; *see also* Appx14765-14766. Hyundai stresses that the 42-year duration of its fee-collection rights was determined based on estimates of how long it would take for Hyundai to collect fees equal to Hyundai's costs to build the facilities. *Id.* at 27-28. Hyundai also likens the situation here to that underlying *Government of Sri Lanka v. United States*, 308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) ("*GOSL*"). *Id.* at 29-34.

These claims are not compelling. As Commerce noted, the record does not establish that Hyundai built the port facilities as public works or for the public good. Appx1059. Rather, Hyundai "receive{d} assistance for building a port for its own use." *Id.* Specifically:

> {T}he essence of this program is that the GOK helped Hyundai Steel build a port for its own use for an extended period of time. The GOK provided the benefit for this program through reimbursements as well as forgoing revenue that the GOK was otherwise entitled to collect, such as berthing fees and other user fees.

Appx1060. Indeed, as Hyundai conceded, "no other party" besides itself "has used the harbor to date." Appx6289.

Moreover, Hyundai's actions undermine its claim that, in transferring fee-collection rights, the GOK was simply repaying a debt.

The fact that the port facilities have no users other than Hyundai, as well as Hyundai's business decision to decline to collect moneys owed to it by an unaffiliated business operator, indicate that the relationship between Hyundai and the GOK was not simply that that of creditor and debtor. *See, e.g.*, Appx6289; Appx15189-15190. Had the fee-collection rights at issue been nothing more than the GOK's payment of a debt, Hyundai would operate the port to ensure collection of the amount "owed" by the GOK. Instead, Hyundai's actual behavior supports Commerce's conclusion that "the GOK helped Hyundai Steel build a port for its own use for an extended period of time." Appx1060.

For this reason, Hyundai's argument that the GOK determined the duration of the fee-rights conveyed to Hyundai based on the GOK's estimates of how long it would take to collect fees equal to Hyundai's construction costs rings hollow. Further, as Commerce noted in considering the same agreement between Hyundai and the GOK in the *HR from Korea 2017* IDM, the port-usage and fee-collection rights are not capped at the amount of the company's construction costs:

> The reimbursements received by Hyundai Steel are not limited by the amount of the costs that Hyundai Steel incurred to construct the wharf; instead, once ownership

> reverted to the GOK, Hyundai Steel was authorized to operate
> the wharf for a specific period, regardless of the amount of fees
> collected and amount of the company's personal usage of the
> harbor facilities.

*HR from Korea 2017* IDM at 7.

Finally, *GOSL* is not apposite here. In the proceeding underlying

that case, the Sri Lankan government required tire companies to pay

above-market rates for rubber purchased from domestic suppliers, and

then await the government's reimbursement of the difference between

the above-market rates and market prices. *GOSL*, 308 F. Supp. 3d at

1379. The court held that this scheme essentially required tire

companies to make interest-free loans to the Sri Lankan government.

*Id.* at 1382. The situation is palpably different here, where Hyundai

received government support to defray Hyundai's costs for constructing

port facilities advantageous to Hyundai, as well as fee-collection rights

that were not capped based on those costs. Appx1060-1061.

In sum, Hyundai does not persuade that there is any error in

Commerce's contribution and/or benefit determinations. Rather,

the agency's findings on both counts are reasonable, supported by

Ct. No. 21-00304                    NON-CONFIDENTIAL VERSION

the record, and in accordance with prior precedent. These findings

should accordingly be affirmed.

## V.      **CONCLUSION**

For the reasons discussed above, Nucor respectfully submits

that the Court affirm Commerce's contribution and benefit

findings with respect to Hyundai's port facilities at North Incheon

Harbor.

                            Respectfully submitted,

                            */s/ Alan H. Price*
                            Alan H. Price, Esq.
                            Christopher B. Weld, Esq.
                            Maureen E. Thorson, Esq.
                            Tessa V. Capeloto, Esq.
                            Adam M. Teslik, Esq.

                            **WILEY REIN LLP**
                            2050 M Street, NW
                            Washington, DC 20036
                            (202) 719-7000

                            *Counsel to Nucor Corporation*

Dated: September 29, 2022

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,798 words.

<u>*/s/ Alan H. Price*</u>
(Signature of Attorney)

<u>Alan H. Price</u>
(Name of Attorney)

<u>Nucor Corporation</u>
(Representative Of)

<u>September 29, 2022</u>
(Date)