Slip Op. 23-142

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

Court No. 21-00304

HYUNDAI STEEL CO.,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

NUCOR CORPORATION,

*Defendant-Intervenor.*

Before: M. Miller Baker, Judge

## OPINION

[The court grants judgment on the agency record to Plaintiff as to port-usage fees and sustains Commerce's uncontested remand determination about sewerage fees.]

Dated: September 26, 2023

*Brady W. Mills*, *Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Mary S. Hodgins*, *Eugene Degnan*, *Edward J. Thomas III*, *Jordan L. Fleischer*, and *Nicholas C. Duffey*, Morris, Manning & Martin, LLP, of Washington, DC, on the briefs for Plaintiff.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Claudia Burke*, Assistant Director; and *Elizabeth Anne Speck*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the brief for Defendant. Of counsel on the brief for Defendant was *Ayat Mujais*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Alan H. Price*, *Christopher B. Weld*, *Maureen E. Thorson*, *Tessa V. Capeloto*, and *Adam M. Teslik*, Wiley Rein LLP of Washington, DC, on the brief for Defendant-Intervenor.

*Baker*, Judge: In this case, Hyundai Steel Company challenges the Department of Commerce's determination that the company's receipt of port-usage rights from the South Korean government was a countervailable benefit. The court remands because Commerce's decision is contrary to law.[1]

I

The Tariff Act of 1930, as amended, provides that when Commerce determines that a foreign

---

[1] The court previously granted the government's request for a voluntary remand as to a sewerage-fees program. ECF 26. The Department then determined that the program is not countervailable and reduced Hyundai's overall subsidy rate by 0.01 percent to reflect that decision. *See generally* ECF 27-1 (remand results). No party challenges that finding, which the court accordingly sustains.

Ct. No. 21-00304 Page 3

government is providing a "countervailable subsidy" to imported goods, and the International Trade Commission further determines that such imports materially injure U.S. domestic industry, the former will impose a "countervailing duty" on the relevant merchandise "equal to the amount of the net countervailable subsidy." 19 U.S.C. § 1671(a).

A countervailable "subsidy exists when (1) a foreign government provides a financial contribution (2) to a specific industry and (3) a recipient within the industry receives a benefit [from] that contribution." *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369 (Fed. Cir. 2014) (citing 19 U.S.C. § 1677(5)(B)). As relevant here, the statute defines "financial contribution" as including the foreign government "foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income." 19 U.S.C. § 1677(5)(D)(ii). It defines "benefit" as "including" the provision of "goods or services . . . for less than adequate remuneration . . . ." *id.* § 1677(5)(E)(iv).[2]

---

[2] Section 1677(5)(E), titled "Benefit conferred," provides:

> A benefit shall normally be treated as conferred when there is a benefit to the recipient, including—
>
> (i) in the case of an equity infusion, if the investment decision is inconsistent with the usual investment practice of private investors, including the practice regarding the provision of risk capital, in the country in which the equity infusion is made,

II

This case arises from a countervailing duty order on certain steel products from four countries including, as relevant here, South Korea. *See Certain Corrosion-Resistant Steel Products from India, Italy, Republic of Korea and the People's Republic of China: Countervailing Duty Order*, 81 Fed. Reg. 48,387 (Dep't Commerce July 25, 2016). In 2019, several domestic steel producers requested an administrative review of that

---

(ii) in the case of a loan, if there is a difference between the amount the recipient of the loan pays on the loan and the amount the recipient would pay on a comparable commercial loan that the recipient could actually obtain on the market,

(iii) in the case of a loan guarantee, if there is a difference, after adjusting for any difference in guarantee fees, between the amount the recipient of the guarantee pays on the guaranteed loan and the amount the recipient would pay for a comparable commercial loan if there were no guarantee by the authority, and

(iv) in the case where goods or services are provided, if such goods or services are provided for less than adequate remuneration, and in the case where goods are purchased, if such goods are purchased for more than adequate remuneration.

For purposes of clause (iv), the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review. Prevailing market conditions include price, availability, marketability, transportation, and other conditions of purchase or sale.

19 U.S.C. § 1677(5)(E).

order for calendar year 2018. Appx01000–01001, Appx01004. Commerce obliged and selected Hyundai, a South Korean producer, as a mandatory respondent. Appx01002.

In its review, the Department examined a program under which the South Korean government grants port-usage rights to private-sector entities. To summarize, South Korean law requires that certain infrastructure—including, as relevant here, port facilities—be government-owned. To encourage the private sector to develop such facilities, the program authorizes participating entities to construct government-owned infrastructure at their expense. In return for their investment, such entities may collect certain usage fees from third-party users. Appx01022–01023.

Under that program, Hyundai built a wharf at North Incheon Harbor between 2003 and 2006. Appx01023. Commerce found that the company and the South Korean government agreed that the former would pay the bulk of the construction costs and then transfer ownership to the latter in 2007. *Id.* Under the agreement, "Hyundai Steel was granted the right to operate and use the port for its own operations freely, as well as collect fees from third-party users, for a specified time period." *Id.* The Department found that the "specified time period" was "about 41 years." Appx01058.

Additionally, "Hyundai Steel reported it collected berth occupancy charges (or berthing income) from shipping companies and reported those amounts for each of the years from 2007 through 2018."

Appx01023. The company further disclosed that "it had a service contract with an unaffiliated private terminal operating company. . . . While Hyundai Steel paid the terminal operating company for its services, Hyundai Steel was entitled to harbor facility usage fees from the terminal operating company." *Id.*

The Department preliminarily determined the port-usage program represented a financial contribution to Hyundai by the South Korean government. Absent their agreement, the latter would have collected the fees in question, which "represent revenue foregone by the [government] within the meaning of section 771(5)(D)(ii) of the Act.[3] The berthing income and the harbor facility usage fees are revenue foregone by the [South Korean government] as [the company] did not pay [the government] the fees it collected." Appx01023–01024.

Commerce also found that the program provided Hyundai a benefit under 19 U.S.C. § 1677(5)(E) "in the amount of the fees exempted reported by Hyundai Steel." Appx01024. "To calculate the benefit, [the Department] summed up the berthing income and the harbor facility usage fees that Hyundai Steel reported and divided this amount by [the company]'s total sales which resulted in a rate of 0.01 percent *ad valorem*." Appx01031.[4]

---

[3] 19 U.S.C. § 1677(5)(D)(ii).

[4] Commerce also determined the program was specific "because the actual recipients are limited in number." Appx01024.

Commerce preliminarily assigned Hyundai an overall countervailable subsidy rate of 0.51 percent *ad valorem* that included other matters not at issue here. Appx01033; Appx01035. The final determination reaffirmed that finding. *See* Appx01057–01061 (conclusions); Appx01081 (rate).

### III

Hyundai brought this action under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest Commerce's final determination. *See* ECF 9 (complaint).[5] The Court has subject-matter jurisdiction under 28 U.S.C. § 1581(c).

Nucor Corporation intervened as of right to support the government. *See* ECF 20. The court then granted the government's request for a voluntary remand to allow Commerce to reconsider or clarify its decision on the sewerage-fees program. ECF 26.

The Department's remand results found the sewerage-fees program not countervailable and reduced Hyundai's subsidy margin by 0.01 percent to 0.50 percent. ECF 27; *see also above* note 1. The company now moves for judgment on the agency record except as to that issue. ECF 34 (confidential); ECF 35 (public); *see also* USCIT R. 56.2. The government and Nucor oppose. ECF 37 (government, confidential); ECF 38

---

[5] In actions such as this brought under 19 U.S.C. § 1516a(a)(2), "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Ct. No. 21-00304 Page 8

(government, public); ECF 41 (Nucor, confidential); ECF 42 (Nucor, public). The court decides the motion on the papers.

IV

Hyundai's motion raises one question: Whether the Department's determination that the port-usage program provided the company with a "benefit" under 19 U.S.C. § 1677(5)(E) is unsupported by substantial evidence or otherwise contrary to law.[6] The company's central contention is that the South Korean government provided port-usage rights "as repayment of a debt" rather than as "a gift-like transfer of funds," ECF 35-2, at 11, and as a result, Commerce has not identified any countervailable "benefit."

The court agrees with Hyundai. The plain and obvious import of the statute is that a countervailable "benefit" "normally" requires, well, "a *benefit* to the recipient." 19 U.S.C. § 1677(5)(E) (emphasis added). A benefit is an "[a]dvantage, profit, good." Oxford

---

[6] Although only 0.01 percent of the company's overall rate stems from the port-usage program, it is the trade law version of the straw that broke the camel's back. Following removal on voluntary remand of the 0.01 percent previously assigned to the sewerage-fees program, *see above* note 1, Hyundai's total subsidy rate is 0.50 percent. Commerce treats any countervailable subsidy rate of *less than* 0.50 percent as *de minimis* and disregards it in imposing countervailing duties. 19 C.F.R. § 351.106(c)(1). That means if the Department were to reverse its position on remand as to port-usage rights, the company would receive a refund of *all* its countervailing duty deposits under the applicable order, not just 0.01 percent.

English Dictionary (online edition). If there's no advantage, profit, or good to the recipient from the government program at issue, then there's no countervailable benefit for purposes of the statute, unless an applicable exception applies (and the government makes no such contention here).[7]

The statutory context confirms the plain meaning of "benefit." Section 1677(5)(E)'s four examples of countervailable benefits all involve the provision of some advantage, profit, or good. *See* 19 U.S.C. § 1677(5)(E)(i)–(iv); *see also Gov't of Sri Lanka*, 308 F. Supp. 3d at 1381–82 (examining each example). Thus, making "interest-free loans" to a government is not a countervailable "benefit" because such loans are to the lender's "*detriment.*" *Gov't of Sri Lanka*, 308 F. Supp. 3d at 1382 (emphasis in original).

Similarly, Commerce's "regulatory catch-all provision" defining "benefit" states that "the Secretary normally will consider a benefit to be conferred where a firm pays less for its inputs . . . than it otherwise would pay in the absence of the government program, or receives more revenues than it otherwise would earn." *Id.* at 1383 (quoting 19 C.F.R. § 351.503(b)(1)). "The

---

[7] *See Gov't of Sri Lanka v. United States*, 308 F. Supp. 3d 1373, 1381 n.7 (CIT 2018) (explaining that the statute's use of "normally" merely "indicate[s] that in the case of certain types of subsidy programs, such as export insurance schemes, the use of the benefit-to-the-recipient standard may not be appropriate") (quoting Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103–316, vol. 1, at 927 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4240); *see also id.* at 1380 n.4.

touchstone of [§ 1677(5)(E)], from which this regulation is derived, is that what the company received somehow exceeded what [it] paid or should have paid," which is often "tested by reference to what would otherwise be available under normal market conditions." *Id.*

In normal market conditions, private companies don't gratuitously build government-owned infrastructure; they demand something in return—"consideration," in contract law terms.[8] Hyundai argues that under its contract with the South Korean government, the value of its port-usage rights for 41 years, eight months, reflects its costs in building the port. ECF 35-2, at 25–26. Indeed, the company points to a detailed equation in the contract that is the basis for that cost calculation. *See id.* (citing Appx14766–14769; Appx14774–14778).

Commerce determined that it was not required to consider Hyundai's costs in constructing the port facilities to determine whether the company received a benefit and refused to consider whether the company's

---

[8] In contract law, consideration does not have to involve either party receiving a benefit, and courts do not typically consider the adequacy of consideration. *See, e.g., Hamer v. Sidway*, 27 N.E. 256, 257 (N.Y. 1891) (rejecting the argument that "unless the promisor was benefited, the contract was without consideration"). In contrast, § 1677(5)(E) demands that the court consider the value of the consideration that the South Korean government received under the contract. So long as that consideration equaled or exceeded the value that Hyundai received, the company obtained no countervailable "benefit."

port-usage rights accurately reflected the costs of constructing the facility. *See* Appx01058–01060. In so doing, the Department erred as a matter of law. If, as Hyundai contends, the value of its port-usage rights did not exceed its construction costs, then the company received no "[a]dvantage, profit, [or] good," and thus no countervailable benefit. The court accordingly remands for the Department to make that determination.

\* \* \*

For the foregoing reasons, the court **GRANTS** judgment on the agency record to Hyundai on whether the provision of port-usage rights at North Incheon Harbor conferred a countervailable benefit and **REMANDS** that issue to Commerce for further consideration. The court further **SUSTAINS** the Department's remand redetermination (ECF 27) as to the sewerage-fees program. A separate remand order will issue.

Dated: September 26, 2023     /s/ *M. Miller Baker*
        New York, NY          Judge